# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

ERICK CERVANTES MERINO,

        Petitioner,

vs.

NICK WHITMORE, et al.,

        Respondents.

No. C26-43-LTS-MAR

**MEMORANDUM
OPINION AND ORDER**

## I. *INTRODUCTION*

This case is before me on a petition (Doc. 1) for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and motion (Doc. 2) for order to show cause filed by Erick Cervantes Merino. Cervantes Merino is currently detained at the Hardin County Jail in Eldora, Iowa, pending removal proceedings. Doc. 1 at 1. On initial review, I entered an order (Doc. 3) directing the respondents (collectively, the Government) to respond to Cervantes Merino's petition, which they did (Doc. 10). Cervantes Merino has filed a reply (Doc. 14). On March 25, 2026, the United States Court of Appeals for the Eighth Circuit issued a decision in *Avila v. Bondi*, No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026), addressing the Government's statutory authority to detain certain aliens without bond under 8 U.S.C. § 1225(b)(2)(A). The Government filed a notice (Doc. 16) of supplemental authority and Cervantes Merino filed a response (Doc. 17). Oral argument is not necessary. *See* Local Rule 7(c).

## II. *BACKGROUND*

Cervantes Merino is a citizen and native of Mexico. He entered the United States in 2014, at the age of six. Doc. 1-8 at 4. He has lived in the United States since that

time and was attending Jefferson High School in Cedar Rapids, Iowa, until Immigration and Customs Enforcement (ICE) detained him on November 18, 2025. Doc. 1 at 3.

On November 16, 2025, law enforcement conducted a traffic stop on Cervantes Merino for missing a stop sign. Doc. 1 at 5. When asked for his identification, Cervantes said he did not have physical identification and told officers his last name was Sosa, which he states is a name he is known by. *Id.* at 6. He was then arrested for providing false identification to a police officer and for other traffic offenses. *Id.* The traffic offenses were dismissed, Cervantes Merino pleaded guilty to providing false information to a police officer and he was ordered to pay a fine. *Id.* While he was released from criminal custody on his own recognizance, he remained under an ICE hold. *Id.* He was then transferred to ICE custody in Cedar Rapids, where he was processed for biometrics and then transported to the Hardin County Jail in Eldora, Iowa. *Id.* The Department of Homeland Security (DHS) issued Cervantes Merino a Notice to Appear on November 18, 2025, concluding that he is removable under 8 U.S.C. §§ 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I). *Id.* at 7.

Cervantes Merino asserts the mandatory detention provision of 8 U.S.C. § 1225(b)(2) does not apply to him, as he had already entered and was residing in the United States at the time he was apprehended. He also argues that his detention violates 8 U.S.C. § 1225(b)(2) and his due process rights under the Fifth Amendment of the United States Constitution. He contends that he is entitled to immediate release and alternatively requests an individualized bond hearing, including procedural protections in which the Government maintains the burden to establish that bond should not be granted by clear and convincing evidence.

### III. STANDARD OF REVIEW

Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). To receive relief, a petitioner must prove by a preponderance of the evidence that his

2

detention is unlawful.  *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025).

#### IV.    ANALYSIS

The Government justifies Cervantes Merino's civil detention without a bond hearing based on the mandatory detention provision of 8 U.S.C. § 1225(b)(2).  The Eighth Circuit has found that similarly situated petitioners qualify under that provision.  *See Avila*, 2026 WL 819258.  As Cervantes Merino acknowledges *Avila*'s applicability, I will treat § 1225(b)(2) as being the applicable statute governing his detention.  While § 1225(b)(2) provides no statutory right to a bond hearing, *see Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018), *Avila* does not foreclose a petitioner from raising an as-applied due process challenge.  *Avila*, 2026 WL 819258 at *8 & n.8 (Erickson, J., dissenting). That is the challenge Cervantes Merino asserts.  *See* Doc. 17.

The fact that an alien is facing removal proceedings does not mean the Government may deprive the alien of due process of law.  *Yamataya v. Fisher* (The Japanese Immigration Case), 189 U.S. 86, 100–01 (1903).[1]  Cervantes Merino demands an individualized bond hearing that would require the Government prove his dangerousness and flight risk.  The parties, however, disagree on the appropriate framework for evaluating his demand.  Cervantes Merino advocates the *Mathews*[2] factors, under which

---

[1] To the extent the Government suggests that an alien has no more due process rights beyond what is statutorily provided, it overreads cases such as *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020) and strips the precedent of meaningful context.  Although the political branches enjoy nearly plenary authority to set the procedures for "determining whether an alien should be admitted" when "at the threshold of initial entry," *id.* at 107, 139, it has long been recognized that those who have crossed that threshold have greater constitutional protections.  *See Zadvydas v. Davis*, 533 U.S. 678, 693–94 (collecting cases).  I therefore reject what would be the Government's widest-reaching contention, which is that all aliens detained under § 1225(b)(2) can claim only those due process protections that have been statutorily provided.  For reasons I will discuss further, *infra*, Cervantes Merino has greater due process protections than his counterparts who are initially arriving into the United States.

[2] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

the court must balance "the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citing *Mathews*, 424 U.S. at 334–35). The Government counters that binding precedent forecloses any interest-balancing for aliens detained pending their removal proceedings. Relying on *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024) and *Demore v. Kim*, 538 U.S. 510 (2003), the Government argues that, barring dilatory tactics, an alien's indiscriminate detention while removal proceedings are ongoing poses no constitutional problem. Doc. 10 at 6.

*Demore* and *Banyee* both hold that it is constitutionally permissible to detain a criminal alien without a bond hearing under § 1226(c) while their removal proceedings remain ongoing. As both cases recognized, the political branches have wide latitude in restricting some subclasses of aliens undergoing removal proceedings from receiving an individualized bond hearing. *See, e.g.*, *Reno v. Flores*, 507 U.S. 292 (1993) (unaccompanied minors); *Carlson v. Landon*, 342 U.S. 524 (1952) (communists). After all, "Congress regularly makes rules as to aliens that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The Government seeks to expand the foregoing logic to an even broader class of aliens: all those who unlawfully entered the United States. *See* 8 U.S.C. § 1225(a)(1) (defining an "applicant for admission" as all aliens who unlawfully entered the country); *Avila*, 2026 WL 819258, at *3 (all applicants for admission are properly detained under § 1225(b)(2), which does not confer a statutory right to a bond proceeding). The broad language in *Demore* and *Banyee* seemingly support its objective. *See Demore*, 538 U.S. at 523 ("[T]his Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process."); *Banyee*, 115 F.4th at 931 ("The rule has been clear for decades: detention during deportation proceedings is

4

constitutionally valid." (cleaned up)); *Banyee*, 115 F.4th at 933 ("[*Zadvydas*] and [*Demore*] leave no room for a multi-factor 'reasonableness' test.").

Cervantes Merino asks that these precedents be read in context. *Demore* justified its holding in part on congressional findings that criminal aliens had a high rate of recidivism and abscondence. *Demore*, 538 U.S. at 518–19. *Banyee* simply reaffirmed that the span of a removal proceeding did not change the due process dimension of the alien's detention. *Banyee*, 115 F.4th 934. Similarly, *Carlson* rested on congressional findings that communists were categorically a "menace to the security of the United States," and even then, the majority pointed out that "[t]here is no evidence or contention that all persons arrested as deportable . . . for Communist membership are denied bail." *Carlson*, 342 U.S. at 541–42. *Reno* was a facial challenge in which the unaccompanied minors had an opportunity to request a bond redetermination hearing. *Reno*, 507 U.S. at 308–09.[3] As there are no attending congressional findings to justify mandatory detention for all aliens who are applicants for admission, it falls back on the courts to perform the necessary balancing.

*Mathews* was never intended as "an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). Indeed, in the immigration-detention context, it has not been the lead framework for measuring what process is due. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022) (Bumatay, J., concurring) (citing *Demore*, 538 U.S. at 521–31; *Reno*, 507 U.S. at 299–315)); *but see Landon*, 459 U.S. at 35 (applying the *Mathews* test for determining whether a returning resident-alien was entitled to a deportation hearing). Instead, the Court generally recognizes a spectrum of protections to aliens "depending upon status and circumstance," *Zadvydas*, 533 U.S. at 694 (citing *Landon*, 459 U.S. at 32–34); in which

---

[3] In fact, *Reno* appears to rely on each juvenile's opportunity for a bond redetermination hearing in rejecting the procedural due process challenge. *Reno*, 507 U.S. at 309 ("At least insofar as this facial challenge is concerned, due process is satisfied by giving the detained alien juveniles the *right* to a hearing before an immigration judge.").

status and circumstance is generalized to the class an alien finds themselves within. *See, e.g.*, *Landon*, 459 U.S. at 35 (re-entry of permanent resident aliens); *Zadvydas*, 533 U.S. at 690 (aliens found to be removeable but who remain detained). I adopt that framework—an examination of Cervantes Merino's status and circumstances for the class of aliens he is in—for this case.[4]

Regarding the class of aliens held under § 1225(b)(2) who have previously affected entry and have remained in the United States for a significant period of time, I find no constitutional right to a bond hearing during the pendency of removal proceedings. Despite this group having some enhanced due process protections because they have gained a foothold in the United States, the political branches' power remains potent. Courts have approved of civil detentions for aliens "pending the inquiry into [the alien's] true character, and while arrangements were being made for their deportation." *Wong Wing v. United States*, 163 U.S. 228, 235 (1896); *accord Jennings*, 583 U.S. 286 ("Congress has authorized immigration officials to detain some classes of aliens during . . . certain immigration proceedings. Detention during those proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made."). This justification translates to this class of aliens who, even though many have been in the United States for decades without incident, the Government may still wish to detain as their removal proceedings are ongoing. The constitutional procedure that this class of aliens is due is the removal proceeding itself. *See Wong Yang Sung v. McGrath*, 339 U.S. 33, 49-50 (1950) (recognizing a constitutional need for a deportation hearing "at least for aliens who had not entered clandestinely and who had been here some time

---

[4] Some courts disagree. *See, e.g.*, *U.H.A. v. Bondi*, ___ F. Supp. 3d ___, 2026 WL 558824, at *13–15 (D. Minn. Feb. 27, 2026); *Zafra v. Noem*, No. 25-cv-541, 2025 WL 3239526, at *4 (W.D. Tex. Nov. 20, 2025). The proper framework for evaluating Cervantes Merino's claim is not well-settled. If *Mathews* is determined to be the appropriate test, I would find that Cervantes Merino's individual circumstances would warrant a bond hearing.

6

even if illegally"), *superseded by statute on other grounds as recognized in*, *Ardestani v. I.N.S.*, 502 U.S. 129, 133 (1991).

Congress might not have intended to sweep in so many people into its mandatory detention scheme.[5]  In addition, past precedent approved of more measured Executive action.  Neither though, change what is the constitutional floor for due process protections.  Analogous to *Demore* and *Banyee*, aliens detained under the mandatory detention provision of § 1225(b)(2) who had nonetheless affected entry into the country are not constitutionally entitled to a bond hearing.  *Cf. Boubacar v. Blanche*, No. 26-cv-59, 2026 WL 972708, at 3 (D. Neb. Apr. 10, 2026) ("While *Avila* does not foreclose Boubacar's procedural due process claim, other Supreme Court and Eighth Circuit precedent does.").

### V.    CONCLUSION

For the reasons set forth herein:

1.    Erick Cervantes Merino's petition (Doc. 1) for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is **denied**.

2.    His motion (Doc. 2) for order to show cause is also **denied** as moot.

---

[5] *Avila* confirms that § 1225(b)(2) applies to a larger group of aliens than what past practice suggested, causing some to argue that the new formulation sweeps in many that Congress never intended to be bound to the mandatory detention provision.  *See Avila*, 2026 WL 819258, at *8 (Erickson, J., dissenting) ("All three branches of government understood the IIRIRA to maintain the distinction between unadmitted noncitizens in the interior and those arriving at the border for detention purposes.  Five presidential administrations . . . and most immigration judges interpreted § 1225 to apply only to those arriving at the border."); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026) (Douglas, J., dissenting) ("The Congress that passed IIRIRA would be surprised to learn it had also required the detention without bond of two million people. For almost thirty years there was no sign anyone thought it had done so, and nothing in the congressional record or the history of the statute's enforcement suggests that it did.").  I must, however, presume that the legislature says in the statute what it meant, *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461–62 (2002), and am bound by *Avila* in construing the statute.

**IT IS SO ORDERED** this 16th day of April, 2026.

_____
Leonard T. Strand
United States District Judge

8